# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,
         Plaintiff,

vs.                                                                No. CR 17-2956 JAP

**MIKE Y. ARCHULETA**, and
**CODY DAVIS**
         Defendants.

## MEMORANDUM ORDER AND OPINION

On February 5, 2018, Plaintiff United States of America ("Government") filed a Motion To Admit Co-Conspirator Statements (Doc. 45) ("Motion") seeking to admit four text messages as non-hearsay under Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)"). On March 6, 2018, Defendant Mike Y. Archuleta responded.[1] In his Response, Mr. Archuleta requested a *James* hearing[2] on the admissibility of the text messages. Defendant Cody Davis did not file a written response.

At a hearing on March 13, 2018, the Court considered several motions, including the Motion and the Response, filed by the parties in preparation for trial. During the hearing, the Government indicated that it wished to add an additional text message to those it sought to admit as non-hearsay statements under Rule 801(d)(2)(E), thereby increasing the number of text messages from four to five.

---

[1] *See* DEFENDANT MIKE ARCHULETTA'S RESPONSE TO UNITED STATES' MOTION TO ADMIT CO-CONSPIRATOR STATEMENTS (Doc. 59) ("Response").
[2] In *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), the Fifth Circuit adopted a test for determining when a declaration by one defendant is admissible against other defendants under Fed. Rules Evid. 801(d)(2)(E). Today, in reference to that case, when a Court examines whether such statements are admissible in a pretrial proceeding, that proceeding is known as a *James* Hearing.

On April 5, 2018, the Court began a *James* hearing on the admissibility of the five text messages as coconspirator statements. The hearing was continued to April 9, 2018 and to May 2, 2018. At the hearings, Assistant United States Attorneys Leticia Simms and Presiliano Torrez represented the Government. At the hearings, Robert Gorence represented Mike Y. Archuleta and Jason Bowles represented Cody Davis. Defendant Mike Y. Archuleta appeared at the April 5, 2018 hearing but waived his appearance at the April 9 and the May 2, 2018 hearings. Defendant Cody Davis appeared at the April 5 and May 2, 2018 hearings, and waived his appearance at the April 9, 2018 hearing.

After considering the parties' written submissions, the evidence, the exhibits, the testimony, and the arguments of counsel, the Court finds that the five text messages are not admissible under Rule 801(d)(2)(E).

**Procedural Background and Facts**

On March 23, 2016 through April 1, 2016, Defendants exchanged several phone calls. On March 25, 2016, United States Fish and Wildlife (USFW) Officers executed a search warrant at the home of Mr. Davis's brother. On March 26, 2016, following the phone calls, Mr. Davis took videos and photos of USFW Officers and their license plates.

On June 9, 2016, the Defendants exchanged five text messages. Three of the five text messages were from Mr. Davis to Mr. Archuleta: (1) "Call me ASAP"; (2) the license plate number of Officer S.C.;[3] and (3) "How do you spell GW name." Two of the five text messages were from Mr. Archuleta to Mr. Davis: (4) the personal home address of Officer S.C.; and (5) Officer S.C.'s actual name. After the exchange of the text messages, Mr. Davis drove multiple

---

[3] To protect Officer S.C's personal information and because it is not relevant to the Court's determination, Officer S'C's name, and the actual text of messages 2, 4, and 5 is omitted and replaced with a summary.

times by the home of Officer S.C. Later that same day, Mr. Davis approached the home approximately four times, and subsequently left.

On October 24, 2017, a Grand Jury indicted Mike Y. Archuleta and Cody Davis for knowingly and willfully conspiring and agreeing together and with each other on June 8, 2016 through June 9, 2016 to prevent by intimidation S.C., a law enforcement officer with the New Mexico Department of Game and Fish, and cross-deputized with the United States Fish and Wildlife Service, from discharging the duties of the United States Fish and Wildlife Service in violation of 18 U.S.C. § 372. On April 10, 2018, the next day following the second day of the *James* hearing, the Government filed a Superseding Indictment that revises the beginning date of the charged conspiracy to March 2016.

**Analysis**

A defendant is guilty under 18 U.S.C. § 372 if the government establishes that: (1) two or more persons conspire; (2) to prevent any person from discharging the duties of their office under the United States; (3) by force, intimidation or threat. *United States v. Rakes*, 510 F.3d 1280, 1288 (10th Cir. 2007). To prove a conspiracy, the government must show: (1) two or more people agreed to violate the law; (2) the defendant knew the essential objective of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; and (4) the alleged coconspirators were interdependent. *United States v. Pickel*, 863 F.3d 1240, 1251 (10th Cir. 2017) (further citation omitted). The Government contends that the five text messages are evidence of a conspiracy between the two defendants to commit the charged crime and therefore, are admissible as non-hearsay statements.

Rule 801(d)(2)(E) provides that a statement offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay and is

admissible at trial. Fed. R. Evid. 801(d)(2)(E). The Tenth Circuit employs a three-part test to determine the admissibility of coconspirator statements under Rule 801(d)(2)(E). The test requires the United States to establish by a preponderance of the evidence that (1) a conspiracy existed, (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy, and (3) the statements were made in furtherance of the conspiracy. *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990). The district court may make these findings through a hearing "outside the presence of the jury." *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir.1994). Alternatively, a court may admit the evidence on condition that the party seeking to admit it will prove the existence of the predicate conspiracy at trial through trial testimony or other evidence. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). The Tenth Circuit has expressed a preference for a pretrial *James* hearing. *Id.*

While a court may consider the hearsay statements themselves when making factual determinations at a *James* hearing, the Tenth Circuit has held that for admissibility "there [must] be some independent evidence linking the defendant to the conspiracy." *United States v. Alcorta*, 853 F.3d 1123, 1142 (10th Cir. 1995) (explaining requirements under *Bourjaily v. United States*, 483 U.S. 171, 180 (1987) (further citations omitted)); *see also* Fed.R.Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it…."). The "independent evidence" must be "'evidence other than the proffered [coconspirator] statements themselves.'" *Owens*, 70 F.3d at 1125 (quoting *United States v. Martinez*, 825 F.2d 1451 (10th Cir. 1987)).

At the *James* hearing, the Government presented testimonial evidence from United States Fish and Wildlife Service (USFW) Officer Delivan Roper. Through Officer Roper, the Government introduced the following evidence: the five text messages at issue, timelines Officer

4

Roper prepared that document phone calls between the Defendants in March 2016 and in June 2016, videos taken from Mr. Davis' phone on March 26, 2016, a USFW Officer's lapel video of the March 25, 2016 execution of a search warrant at the home of Mr. Davis' brother, maps detailing the Defendants' movements on June 9, 2016, and photos, some of which were taken from Mr. Davis' phone, some of which were taken from a camera in Officer S.C.'s front yard and some of which were taken by the Government. The Government argues that this evidence directly or inferentially establishes a conspiracy to commit the unlawful objective of intimidating or threatening a law officer to impede his official duties.

The Government's argument rests on three syllogisms: (1) the two Defendants exchanged several phone calls between March 23, 2016 and April 1, 2016, and because Mr. Davis took pictures and videos following the calls, and because Mr. Davis threatened to have USFW officers' jobs when on March 25, 2016 USFW officers executed a search warrant at the home of the brother of Mr. Davis, it is a reasonable inference that at or about that time, the two Defendants agreed to enter into a conspiracy to impede USFW officers in the performance of their duties; (2) the evidence shows that in June 2016 the two Defendants agreed to obtain USFW Officer S.C.'s address, and they could only want a USFW officer's address for an unlawful purpose; and (3) the evidence shows that the Defendants were friends who exchanged several phone calls, which means Mr. Archuleta must have known and agreed that Mr. Davis would go to Officer S.C.'s home to intimidate him. None of this evidence directly or inferentially corroborates these arguments. Each syllogism relies on a faulty premise that presupposes a single irrefutable inference from circumstantial evidence.

The March 2016 time link between the Defendant's exchange of phone calls and Mr. Davis' subsequent photographic and videographic documentation is not evidence of an

agreement to impede by intimidation USFW Officer S.C. in the performance of his duties. Officer S.C. was not present during any of the events in March 2016. There is no indication that in March or April 2016 Defendants knew or could have known of Officer S.C's prospective June 2016 participation in an investigation of Mr. Davis. Even if the Government's argument were sound that the time link between these events creates a reasonable inference of a joint intention to intimidate any USFW officer, that tenuous inference does not establish an agreement to commit the objectives of the crime with which the Defendants are charged, which specifies Officer S.C. as the object of their unlawful agreement. "[U]nder established case law, the fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" *Ocasio v. United States*, 136 S.Ct. 1423, 1429 (2016) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). Mr. Davis' threats or curses on March 25, 2016 to USFW officers followed by phone calls to Mr. Archuleta also do not create a reasonable inference of an agreement between the two Defendants. Evidence that a phone call took place is not substantive evidence of an agreement between participants.

Defendants' act of obtaining USFW Officer S.C.'s identity and address also is not per se evidence of an agreement to perform a common unlawful objective. The Government offered no evidence that Mr. Archuleta knew of or agreed with Mr. Davis' decision to go to Officer S.C.'s home. Similarly, a friendship between two people does not inexorably lead to an inference of a joint unlawful objective. In the absence of independent evidence establishing an agreement between the Defendants to complete this offense, there can be no conspiracy.

Because the Government has not shown a conspiracy between the Defendants, the five text messages do not fall within the Rule 801(d)(2)(E) exception.

IT IS ORDERED that the Government's Motion to admit the five text messages as non-hearsay under Fed.R.Evid. 801(d)(2)(E) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE